# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **MADISON COUNTY COMMUNICATIONS DISTRICT,** on behalf of itself and all others similarly situated, | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) **CIVIL ACTION NO: _____** |
| v. | )<br>) **DEMAND FOR JURY TRIAL** |
| **KNOLOGY, INC.** | )<br>) |
| Defendant. | )<br>)<br>) |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Madison County Communications District ("the District") and, on behalf of itself and other similarly situated state and local entities that collect taxes or fees for 911 emergency services referred to herein as "Emergency Communication Districts" or "ECDs"), submits this Complaint against Defendant Knology, Inc.

## SUMMARY OF CLASS ACTION COMPLAINT

1. The District provides critical emergency 911 services to citizens of Madison County, Alabama and others who visit and travel through the county. These services, like the services of other ECDs, are a central component of the public safety and emergency preparedness system. The District's 911 services allow emergency response personnel to be promptly directed to the scenes of emergencies, dangers, and disasters; they have, thus, saved countless lives and provided invaluable benefits to the community.

2.      The District's 911 services, like those of other class members, are principally funded by emergency telephone service charges ("911 Charges"), which are collected from users of business and residential telephone services.

3.      Knology provides business and residential telephone service through what are known as "exchange access lines" (essentially, telephone lines)[1] and through voice over internet protocol technology (VOIP).  In virtually every state in which Knology does business, state law mandates that Knology bill, collect, report, and remit 911 Charges for (1) every exchange access line and (2) every 10-digit telephone number that it provides to users of VoIP technology that may be used to contact emergency call centers.

4.      Knology has not collected 911 Charges in accordance with law.  To the contrary, Knologybills, collects, and remits only a fraction of the required 911 Charges.  In so doing, Knology has deprived the District and other ECDs of the revenue needed to provide critical, lifesaving, emergency services, and it has forced the District and other ECDs to raise 911 Charges on other customers.  By billing and collecting less than the required amount of 911 Charges, Knology is able to offer its services at a lower cost to customers and has, thereby, gained a competitive advantage over other telephone service providers who comply with law.

5.      The District brings this case, seeking both monetary and injunctive relief, on behalf of itself and all other similarly situated ECDs.  The District seeks recovery of the unpaid 911 Charges, along with penalties, costs, and expenses as allowed by law, and

---

[1] "Exchange access lines" are sometimes referred to as simply "lines," "access lines," "voice lines," "exchange access facilities," or even "trunk."  Other terms also include "pathways" or "channels."

the District seeks to compel Knology to fulfill its obligations to bill, collect, and remit 911 Charges.

## PARTIES, JURISDICTION, AND VENUE

6. The District is a political and legal subdivision of the State of Alabama with the power to sue and be sued under Federal Rule of Civil Procedure 17(b). It was created by the governing body of Madison County, Alabama.

7. Knology, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Georgia. Knology regularly and systematically conducts business in Madison County and in other parts of Alabama.

8. This Court has jurisdiction under 29 U.S.C. § 1332(d) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and because this is a class action in which at least one plaintiff is not a citizen of the defendant's home state.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

10. Alabama and other states have enacted laws providing for the creation of ECDs, such as the District, in order to establish local emergency telephone service commonly referred to as "911 Service." These state laws provide for the funding of these ECDs by assessing a charge on exchange access lines and lines that allow for voice over internet protocol (VoIP) telephone service.

11. At all times relevant to this action, the District has assessed valid 911 Charges in Madison County, Alabama.

12. The District, under the supervision of its volunteer board, operates an extensive facility staffed by trained personnel 24 hours a day, 7 days a week, who receive 911 telephone calls and transmit emergency information to the proper authorities.

13. The District relies on 911 Charges to provide its emergency, often life-saving, services.

14. Knology is a telephone service supplier throughout Alabama (including within Madison County) and in at least sixother states.

15. Applicable law requires telephone service suppliers, such as Knology, to bill, collect, and remit 911 Charges for (1) every exchange access line, excluding those provided to a person or entity otherwise exempt from taxation[2] and (2) every 10-digit telephone number that it provides to users of VoIP technology that is capable of connecting to a 911 center.

16. Knology has failed to bill, collect, and remit 911 Charges in accordance with law.

**A.   Knology's Purposeful Under-Billing, Under-Collecting, and Underpayment of 911 Charges for Business Lines Provided by Multiplexed Circuits**

17. Many of Knology's exchange access lines are provided through the use of a technology known as "multiplexing." Broadly speaking, multiplexing refers to a group of technologies that allow many different signals (e.g., multiple phone calls) to travel through one circuit simultaneously.

---

[2]There is a minor exception in Alabama — "[n]o service charge shall be imposed upon more than 100 exchange access facilities per person, per location." Ala. Code § 11-98-5(c).

18. Knology provides the majority of its multiplexed circuits to commercial customers. For example, Knology offers these customers multiplexed telephone services with multiple channels available through a single line known as a "T-1" line.[3]

19. Each multiplexed circuit can be assigned one or more working telephone numbers. Thus, many more than 24 10-digit individual telephone users can access 911 emergency services on one multiplexed circuit.

20. Knology is required to bill, collect, and remit to the District and to other ECDs 911 Charges for every exchange access line, channel, or pathway.[4]

21. Knology does not meet its obligation. Instead, Knology bills, collects and remits 911 Charges on only a small fraction of the voice lines, pathways, or channels supplied through each multiplexed circuit.

22. By not billing and collecting all the required 911 charges, Knology is able to provide telecommunication services at prices that are cheaper than its competitors, particularly to its business customers, and, thus, gains a competitive advantage.

23. Knology has known that Alabama law and the law of other states require it to bill, collect, and remit 911 Charges for each voice line, pathway or channel that could be used to access 911 services.

---

[3] The T-1 line provided by Knology uses a service level known as the "Primary Rate Interface" ("PRI"). For present purposes, what is most relevant is that PRI is a standard method of dividing the flow of information through a T-1 line; in particular, within the United States, this means that a single T-1 line will have multiple voice "channels" along with 1 channel that line that cannot carry telephone conversations (i.e., it can be used only for signaling and control purposes). .

[4] As indicated above, in some states, such as Alabama, there is an exception for tax exempt entities and a cap on the number of lines charged per person per location.

24. Knology owed a specific legal obligation to bill, collect and remit the correct amount of 911 Charges and failed to do so.

25. Prior to the filing of this action, Knology never informed the District that it was not billing, collecting, and remitting 911 Charges on the correct number of exchange access lines.

26. The above practices deprive the District of critical financial resources.

**B.     Knology's Failure to Bill, Collect and Remit 911 Charges for Lines Provided to Customers with Multiple Locations**

27. Knology is required by law to bill, collect, and remit 911 Charges on exchange access lines provided to customers at all of the customers' locations. Some states, like Alabama, place a cap on the number of 911 Charges that must be billed and collected at a single location.[5] Even where a per location cap exists, Knology is required to bill, collect, and remit 911 Charges on each and every one of its customers' locations up to the cap.

28. Knology has failed to bill, collect, and remit 911 Charges on all its customers' locations. Instead, for customers whose number of lines exceeds the statutory caps at a single location, Knology only bills, collects and remits 911 Charges up to the statutory cap at thatsingle location and does not bill and collect 911 charges at the other locations. Therefore, Knology is able to gain a competitive advantage over other telephone service providers with regard to customers who have multiple locations

---

[5] In Alabama, the number of 911 Charges that are to be billed and collected is limited to one-hundred (100) per person, per location. Ala. Code § 11-98-5(c).

because Knology is charging fewer than the correct number of 911 Charges to those customers.

29.     By failing to collect 911 Charges for exchange access lines at all of its customers' locations, Knology is causing the District and other ECDs to provide 911 service to Knology customers at locations for which no 911 Charges are being billed or collected and is depriving the District of critical financial resources.

**C.      Knology's Failure to Bill, Collect, and Remit 911 Charges for VoIP Users**

30.     Knology provides wired telephone service to users of voice over internet protocol (VoIP) technology.

31.     Knology is required to bill, collect and remit a 911 Charge for every 10-digit telephone number that it provides to users of VoIP technology.

32.     Knology has failed to fulfill this obligation by issuing 10-digit telephone numbers and providing wired-access to VoIP users without billing, collecting, or remitting 911 Charges for each 10-digit telephone number to the District and to other ECDs.

33.     By not billing and collecting 911 Charges for each 10-digit telephone number from VoIP users, Knology is able to offer VoIP users with lower cost service and has, thus, gained a competitive advantage over other telephone service providers who follow the law.  Knology is also causing the District and other ECDs to provide 911 services to VoIP users from whom no 911 Charges are being billed or collected and is depriving the District and other ECDs of critical financial resources.

## CLASS ACTION ALLEGATIONS

34. The District brings this case as a class action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure. The District seeks certification of this case as a class action on behalf of the following:

> All state and local entities that collect taxes or fees for 911 emergency services where laws have been enacted requiring telephone service providers to bill and collect from telephone service users and then to remit to emergency communication districts (by whatever name or designation) a charge designated for the purpose of supporting the operation of emergency 911 response services (commonly referred to as "911 Charges") where Knology has failed to bill, collect, and remit 911 Charges on the statutorily required number of exchange access lines (also described as exchange access facilities, voice lines, pathways, or channels) and 10-digit telephone numbers provided to users of VoIP technology.[6]

35. The District is a member of the class (referred to hereafter as the "Emergency Communications District Class").

36. The Emergency Communications District Class is so numerous that separate joinder of each member is impracticable. While the exact number of class members is unknown, it is more than 100.

37. This litigation will focus on the conduct of Knology and the law as it applies to that conduct. Accordingly, numerous questions of law and fact are common to the Emergency Communications District Class, and the answer to these common questions will drive the resolution of this litigation, such that common questions predominate over individual ones. Included within the common questions are:

---

[6] The proposed class is referred to herein as the "Emergency Communications District Class."

    a.    Whether Knology is legally obligated to bill, collect, and remit a 911 Charge for each exchange access line, including those supplied through a multiplexed circuit;

    b.    For customers or subscribers that have more than one location, whether Knology is legally obligated to bill, collect, and remit 911 Charges for access lines that provide telephone service at all of the locations;

    c.    Whether Knology has a practice of undercounting the number of exchange access lines, including those provided through a multiplexed circuit and those provided to customers or subscribers with multiple locations;

    d.    Whether Knology has a practice of under-billing, under-collecting, and underpaying the Emergency Communications District Class for 911 Charges for lines, including those provided by multiplexed circuits;

    e.    Whether Knology fails to bill, collect, and remit 911 Charges for exchange access lines provided to customers or subscribers at more than one location;

    f.    Whether injunctive relief should be issued compelling Knology to bill, collect, and remit a 911 Charge on every exchange access line (subject to any statutory caps) provided through multiplexed circuits and for every 10-digit telephone number provided to users of VoIP technology;

    g.    Whether Knology is required to bill, collect, and remit 911 Charges for every 10-digit telephone number it supplies to service users, including users of exchange access lines and users of VoIP technology;

    h.    Whether each of Knology's actions was negligent, reckless, wanton, knowing, or intentional.

38.    The District's claims are typical of members of the Emergency Communications District Class because Knology owes the same duty to all members of the Class and because the District has been harmed in a manner identical to all members of the Class.

39. The District will fairly and adequately represent and protect the interests of the Emergency Communications District Class. The District is one of the largest and most sophisticated emergency communications districts, employing state of the art technology in the United States and has the sophistication, experience, and resources to represent other communications districts throughout the United States. The District has retained counsel experienced and competent in the prosecution of class actions and complex litigation. The District has no interests that are adverse to the interests of the Emergency Communications District Class.

40. Final injunctive and/or declaratory relief under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in this case because Knology has acted on grounds generally applicable to the Emergency Communications District Class. Final injunctive or corresponding declaratory relief requiring Knology to bill, collect, and remit the proper number and amount of 911 Charges to each member of the class is appropriate with respect to the Emergency Communications District Class as a whole.

41. This action qualifies for certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to the members of the Emergency Communications District Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

42. Individual litigation of the claims of all members of the Emergency Communications District Class is economically unfeasible, particularly in the cases of smaller emergency communications districts with fewer telephone service users. The

Emergency Communications District Class is readily definable. Prosecution as a class action will eliminate the possibility of repetitious litigation and the threat of inconsistent rulings or adjudications that could establish incompatible standards of conduct for Knology.

43. Absent a class action, members of the Emergency Communications District Class will continue to suffer damage, and the wrongful conduct and violations of law by Knology will proceed without a remedy while Knology continues to enjoy a competitive advantage and contributes to the underfunding of emergency 911 services.

44. This action will result in an orderly and expeditious administration of class claims. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

45. This action presents no difficulty that would impede its management by the Court as a class action, and a class is superior to other available methods for the fair and efficient adjudication of the claims.

## COUNT I
### (Declaratory Judgment)

46. The District repeats and reavers the foregoing allegations as if fully set forth herein.

47. An actual, present, and justiciable controversy has arisen and now exists between the Emergency Communications District Class and Knology concerning Knology's legal obligations to bill, collect, and remit to the District payment of 911 Charges based on the number of exchange access lines and users of VoIP technology

capable of connecting to a 911 center, including voice lines, channels, or pathways supplied by multiplexed circuits.

48.     An actual, present, and justiciablecontroversy has arisen and now exists between the Emergency Communications District Class and Knology concerning Knology's failure to bill, collect and remit 911 Charges for all the access lines, channels, or pathwaysit supplies to customers with multiple locations.

49.     An actual, present, and justiciable controversy has arisen and now exists between the Emergency Communications District Class and Knology concerning Knology's failure to bill, collect, and remit 911 Charges for every 10-digit telephone number that it supplies to VOIP users.

50.     The District seeks a judgment declaring that Knology has at all times been required under law to bill, collect, and remit payment to the District of 911 Charges for all exchange access lines, including all voice pathways,[7] that were supplied by Knology to service users at all locations, including all working telephone numbers supplied by multiplexed circuits and for all 10-digit telephone numbers supplied by Knology to VoIP users capable of reaching a 911 center.

51.     A judicial declaration regarding these issues is necessary and appropriate so the Emergency Communications District Class may ascertain and effectively enforce its rights to receive full and complete payment of 911 Charges as authorized by law.

---

[7] Other than customers who are tax-exempt and subject to any caps imposed by law.

WHEREFORE, the District, on behalf of itself and all members of the Emergency Communications District Class, demands a declaratory judgment as set forth above against Knology.

## COUNT II
### (Negligence/Negligence *Per Se*/Gross Negligence/Recklessness)

52. The District repeats and reavers the foregoing allegations as if fully set forth herein.

53. Knology was under statutory and common law duties to bill, collect, and remit to the District and other class members the proper amount of 911 Charges. The state statutes imposing such duties where Knology does business include, but may not be limited to: Alabama Code § 11-98-1, *et seq.*; Tennessee Code § 7-86-10, *et seq.*; Code of Laws of South Carolina § 23-47-10, *et seq.*; South Dakota Code § 34-45-1, *et seq.*; Florida Statutes §§ 364.01, *et seq.* and 365.01, *et seq.*; Georgia Code § 46-5-1, *et seq.*; and Kansas Statutes § 12-5362, *et seq.*

54. Knology was negligent, grossly negligent, or reckless in failing to exercise reasonable care and breached these duties.

55. Knology's negligent, grossly negligent, or reckless breaches of its duties to exercise reasonable care proximately caused injury to the District and other class members, including loss of critical financial resources.

56. Knology's breach of the statutory duties imposed by state law also constitutes negligence *per se*.

57. The District and other class members were within the class of persons that the emergency telephone service laws were designed to protect and benefit as they were intended recipients of the 911 Charges and relied upon payment of those charges to fund essential emergency service operations.

58. The injuries of the District and other class members are the precise injuries that the emergency telephone service laws were designed to prevent, and those injuries hinder and impair the ability to provide 911 services in furtherance of the laws' stated purposes.

WHEREFORE, the District, on behalf of itself and the Emergency Communications District Class, demands judgment against Knology for compensatory and punitive damages in an amount to be determined by a struckjury plus attorney's fees and costs.

## COUNT III
### (Breach of Fiduciary Duty)

59. The District repeats and reavers the foregoing allegations as if fully set forth herein.

60. During all relevant times, Knology was under a fiduciary duty to bill, collect, and remit to the District and to other members of the Emergency Communications District Class the 911 Charges upon each exchange access line, channel, or pathway (except for statutorily exempted customers) capable of reaching a 911 center supplied by Knology to telephone service users at all locations and upon each 10-digit telephone number supplied to users of VoIP technology.  These fiduciary duties

were imposed upon Knology by the state statutes referenced in paragraph 53 above and by uniform common law in Alabama and other states.

61. The fiduciary duty is derived from the special and confidential relationship between the Emergency Communications District Class and Knology.

62. The fiduciary relationship gives rise to a duty of care on the part of Knology whereby Knology was required to act with the utmost good faith, loyalty and honesty toward the Emergency Communications District Class.  The emergency telephone service laws create a system to fund 911 emergency services that require emergency communication districts to rely upon telecommunication suppliers, such as Knology, to act in good faith and with honesty in billing, collecting, and remitting the appropriate 911 Charges.

63. The Emergency Communications District Class has had to rely on Knology to act in good faith and with honesty because the District and other class members are not aware of and have no way of calculating the actual number of exchange access lines, channels, or pathways capable of reaching a 911 center supplied by Knology to telephone service users or the actual amount of 911 Charges that should be paid. Knology has sole and exclusive control of that information.

64. As the sole party possessing the information needed to determine the correct amount of 911 Charges that should have been paid, Knology was in a dominant position in relation to the Emergency Communications District Class.  As Knologydetermined the amount of 911 Charges received by each class member, and as those 911 Charges were the principal source of operating capital funds, Knology

effectively exercised a level of control over the Emergency Communications District Class.

65. In relying on Knology to perform its statutory and common law obligations, the District and other class members trusted that Knology would act with utmost good faith, loyalty, and honesty toward the District.

66. Knology knowingly breached its fiduciary duties and the standard of care.

67. Knology's breach of its fiduciary duties and of the standard of care injured the District and other class members, proximately causing a loss of significant revenue needed to fund essential emergency services.

WHEREFORE, the District, on behalf of itself and the Emergency Communications District Class, demands judgment against Knology for compensatory and punitive damages in an amount to be determined by a struckjury plus attorney's fees and costs.

## COUNT IV
### (Wantonness)

68. The District repeats and reavers the foregoing allegations as if fully set forth herein.

69. Knology's conduct as described herein constitutes wantonness. Knology acted with a reckless disregard for the well-being of the District and other class members with knowledge that the underpayment of 911 Charges would likely cause injury or damage.

70. Knology's wanton behavior proximately caused injury and damages to the District and other class members, including the loss of operating and capital funds and an impairment of the ability to provide 911 services.

WHEREFORE, the District, on behalf of itself and the Emergency Communications District Class, demands judgment against Knology for compensatory and punitive damages in an amount to be determined by a struck jury plus attorney's fees and costs.

### COUNT V
### (Injunction)

71. The District repeats and reavers the foregoing allegations as if fully set forth herein.

72. Knology is obligated by statutory and common law to accurately bill, collect, and remit 911 Charges based on the number of exchange access lines, channels or pathways capable of connecting to 911 centers that were supplied by Knology to telephone service users and the number of 10-digit telephone numbers supplied to users of VoIP technology. Knology has failed to meet its obligations under law and its continued failure will irreparably harm the Emergency Communications District Class because the class members rely upon the 911 Charges to provide funding for their vital operations. Knology's actions will also continue to threaten public safety.

73. The Emergency Communications District Class does not have an adequate legal remedy, as future enforcement of its rights would require that class members file and litigate multiple actions against Knology.

74. A permanent injunction is warranted considering the balance of hardships between the parties. Knology would suffer absolutely no legally recognizable harm from being required to meet its statutory and common law obligations. Conversely, the Emergency Communications District Class and the public would be manifestly and actually harmed by Knology's failure to fulfill its statutory and common law obligations.

75. For these reasons, the District, on behalf of itself and the Emergency Communications District Class, prays that the Court permanently enjoinKnology from failing to bill, collect, and remit 911 Charges for all exchange access lines, channels, or pathways capable of reaching 911 centers that are supplied by Knology to telephone service users in accordance with law and for all 10-digit telephone numbers provided to users of VoIP technology.

WHEREFORE, the District, on behalf of itself and the Emergency Communications District Class, seeks a permanent injunction.

**PLAINTIFF DEMANDS A TRIAL BY STRUCKJURY**

This the 19th day of November, 2012.

                                          s/ Larry B. Moore
                                          Larry B. Moore (ASB-4645-O74L)
                                          lbmoore@mtattys.com
                                          Ian Michael Berry
                                          imberry@mtattys.com

OF COUNSEL:
MOORE & TROUSDALE, PC
211 North Court Street
Florence, Alabama 35631
Phone: (256) 718-0120
Facsimile: (256) 718-0251

      s/ W. Percy Badham  
Richard T. Dorman (ASB-5976-A42R)  
rdorman@badhambuck.com  
W. Percy Badham III (ASB- 2147-D51W)  
pbadham@badhambuck.com  
Brannon J. Buck (ASB-5848-K56B)  
bbuck@badhambuck.com  
Brett A. Ialacci (ASB-7679-E67I)  
bialacci@badhambuck.com  

OF COUNSEL:  
BADHAM & BUCK, LLC  
2585 Wells Fargo Tower  
420 20th Street North  
Birmingham, Alabama 35203  
Phone: (205) 521-0036  
Facsimile: (205) 521-0037  

      s/ Steven L. Nicholas  
Steven L. Nicholas  
slh@cunninghambounds.com  
Gregory B. Breedlove  
gbb@cunninghambounds.com  
Attorneys for the Plaintiff  

OF COUNSEL:  
CUNNINGHAM BOUNDS, LLC  
1601 Dauphin Street  
Mobile, Alabama 36604  
Phone: (251) 471-6191  
Facsimile: (251) 479-1031  

**PLEASE SERVE THE FOLLOWING DEFENDANT VIA CERTIFIED MAIL:**

KNOLOGY, INC.  
CSC Lawyers Incorporating Service, Inc.  
150 South Perry Street  
Montgomery, Alabama 36104